IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| MICHAEL PATRICK, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-43 (RDA/IDD) |
| ) | |
| MARCO RUBIO, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss, or in the Alternative, For Summary Judgment (the "Motion"). Dkt. 10. This Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter is now ripe for disposition. Considering the Motion together with the Complaint (Dkt. 1), Defendants' Memorandum in Support (Dkt. 12), Plaintiffs' Opposition Brief (Dkt. 18), and Defendants' Reply (Dkt. 22), this Court GRANTS the Motion for the reasons that follow.

### I. BACKGROUND

#### A. Factual Background

On December 12, 2023, Plaintiff Ekaterina Volkova became the beneficiary of an approved Form I-129F, Petition for Fiancé(e), based on her relationship with Plaintiff Michael Patrick. Dkt. 1 ¶ 19. On January 3, 2024, Volkova was notified that her petition had been received by the National Visa Center ("NVC") for processing. *Id.* ¶ 20. On February 14, 2024, she submitted her required Form DS-160. *Id.* ¶ 21. On March 19, 2024, Plaintiff appeared at the U.S. Embassy in Warsaw, Poland, for her required visa interview. *Id.* ¶ 22. At the conclusion of the interview, Plaintiffs were asked to submit additional information regarding Patrick's employment history and residence. *Id.* ¶ 23. They did so.

*Id.* Plaintiffs assert that they have made numerous requests for further adjudication of their petition. *Id.* ¶¶ 23-25.

The statement of facts proposed by Defendants only meaningfully differs from the recitation of facts in the Complaint in that it provides the Declaration of Samuel W. McDonald, which avers that: (i) the consular officers determined that Volkova failed to demonstrate her eligibility for the visa sought and that additional screening was required on March 19, 2024, and refused her visa application under 8 U.S.C. § 1201(g) (Section 221(g) of the Immigration and Nationality Act); and (ii) that the screening remains ongoing and the visa application remains refused pursuant to those provisions. Dkt. 12-1 ¶¶ 7-8. Although Plaintiffs did not clearly allege it in their Complaint, Plaintiffs agree that the visa application is in a "refused" status but contend that this is not a final denial. Dkt. 17 at 3.

In reliance on these allegations, Plaintiffs plead one claim for relief: that delay in the adjudication of Volkova's visa application violates the Administrative Procedure Act ("APA").

## B. Procedural Background

Plaintiffs filed their Complaint on January 9, 2025. Dkt. 1. On March 28, 2025, Defendants filed their Motion to Dismiss. Dkt. 11. On April 10, 2025, Plaintiffs filed their Opposition and two Reponses (Dkts. 17, 18, 19). On April 23, 2025, Defendants filed their Reply. Dkt. 22.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal when the Court lacks jurisdiction over the subject matter of the action. A district court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that subject-matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

There are two ways in which a defendant may prevail on a 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject-

matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. Under this method of attack, all facts as alleged by the plaintiff are assumed to be true. *Id.* Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject-matter jurisdiction over the case apart from the pleadings. *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995). In such a case, "[n]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.3d 884, 891 (3d Cir. 1977). Moreover, a court may consider evidence extrinsic to the complaint to determine whether subject-matter jurisdiction exists. *Adams*, 697 F.2d at 1215 (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)).

### III. ANALYSIS

Defendants move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure ("Rule") 12(b)(1) for lack of subject-matter jurisdiction, Rule 12(b)(6) for failure to state a claim, or, in the alternative, for summary judgment under Rule 56(a). Dkt. 12 at 3. "Generally, a court must resolve jurisdictional issues before considering the merits of a claim, because '[w]ithout jurisdiction the court cannot proceed at all in any cause.'" *Whitaker v. Monroe Staffing Servs., LLC*, 42 F.4th 200, 206 (4th Cir. 2022) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)); *see also Zadeh v. Blinken*, 2024 WL 2708324, at *4 (N.D. Ill. May 20, 2024) ("Subject matter jurisdiction always comes first."). Accordingly, the Court must first evaluate Defendants' Motion first under Rule 12(b)(1) and, if the Court finds that there is no subject matter jurisdiction, the Court need not address Defendants' other arguments.

Defendants contend that Plaintiffs cannot establish a clear, non-discretionary duty for the U.S. Department of State (the "State Department") to re-adjudicate any non-citizen's visa application. *Id.* at 8. On the other hand, Plaintiffs allege that the State Department has a duty to adjudicate their visas, and that this duty has not been fulfilled. Dkt. 17 at 9. Judicial review of agency inaction is limited under the APA and, thus, this initial issue is determinative of Plaintiffs' claims. As the Supreme Court

held in *Norton v. Southern Utah Wilderness Alliance*, APA Section 706 claims, asking a court to "compel agency action unlawfully withheld or unreasonably delayed," may "proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." 542 U.S. 55, 64 (2004). The Fourth Circuit has framed *Norton*'s prohibition on judicial review of APA Section 706 claims as a part of APA Section 701(a)(2)'s preclusion of judicial review of "agency action . . . committed to agency discretion by law." *Lovo v. Miller*, 107 F.4th 199, 211 (4th Cir. 2024). The Fourth Circuit treats the absence of discrete, required agency action as jurisdictional, not merely as an issue of the plaintiff failing to state a meritorious APA Section 706 claim. *See id.* at 216 (affirming dismissal for lack of subject-matter jurisdiction where the plaintiffs' APA claim was not based on a discrete legal requirement); *Gonzalez v. Cuccinelli*, 985 F.3d 357, 365-66 (4th Cir. 2021) (characterizing *Norton*'s holding as jurisdictional); *NAACP v. Bureau of the Census*, 945 F.3d 183, 191 (4th Cir. 2019) (finding that a plaintiff's failure to identify agency action eligible for judicial review under the APA is a "jurisdictional defect").

Although the Complaint does not premise any count on the Mandamus Act, both the Complaint and the Opposition make reference to it. Accordingly, the Court notes that the Mandamus Act similarly "only permits federal courts to exercise jurisdiction if an agency has a clear duty to act." *Lovo*, 107 F.4th at 216 (citing 28 U.S.C. § 1361). Indeed, the Supreme Court's conclusion in *Norton* that "the only agency action that can be compelled under the APA is action legally required" derives from the traditional mandamus remedy, which was historically "limited to enforcement of a specific unequivocal command, the ordering of a precise definite act . . . about which [an official] had no discretion whatever." 542 U.S. at 63 (internal citations omitted). Thus, mandamus relief is only available where the agency has a "clear duty to act," and, as is the case under the APA, such a clear duty is a "threshold requirement[ ]" under the Mandamus Act that is "jurisdictional; unless [it is] met, a court must dismiss the case for lack of jurisdiction." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). In assessing whether a clear duty or a discrete, required agency action exists, courts

look for a "clear indication of binding commitment," *Norton*, 542 U.S. at 69, in "the text of the relevant statutes and regulations," *Lovo*, 107 F.4th at 211. "[T]he presence of 'unmistakably mandatory' language, such as the word 'will,' can provide sufficient evidence of the unequivocal command . . . to hold that an agency is compelled to act." *Id.* (citing *Gonzalez*, 985 F.3d at 366-71). However, "the impact of seemingly mandatory or permissive language depends heavily on the context in which it appears." *Id.* at 212.

Federal regulations provide that, when a visa application has been executed, "the consular officer *must* issue the visa, refuse the visa, or . . . discontinue granting the visa." 22 C.F.R. § 41.121(a) (emphasis added); *see also* 22 C.F.R. § 42.81(a) (providing that "the consular officer must issue the visa, refuse the vias under § 221(a) or (g) . . . or . . . discontinue granting the visa"). This mandatory language establishes a nondiscretionary duty for consular officers to review and adjudicate visa applications by issuing, refusing, or discontinuing granting visas. Importantly for this case, this language explicitly provides that consular officers may discharge their duties by refusing a visa. 22 C.F.R. § 41.121(a) and 22 C.F.R. § 42.81 specifically provides that a Section 221(g) refusal constitutes a qualifying refusal. The State Department Foreign Affairs Manual further clarifies, "[a] refusal under INA [Section] 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM 302.1-8(B)(c).

Defendants here have already taken the discrete action required of them by refusing the application for administrative processing and requesting additional information and thus have satisfied their obligation to adjudicate the visa applications. *See* Dkt. 17 at 3 (conceding "Plaintiff Volkova's visa remains in a 'refused' status . . . ."). After a refusal, such as a Section 221(g) refusal for administrative processing, has been made, no further discrete action is required under the INA, 22 C.F.R. § 41.121(a) or § 42.81, or any other pertinent statute or regulation. Put another way, "[i]n refusing Plaintiff[s'] applications under [Section] 221(g) after [their] interview[s] with consular officers, [Defendants] complied with the regulations governing visa adjudications. [Defendants]

thereby discharged [their] nondiscretionary duty."[1] *Yaghoubnezhad v. Stuffi*, 734 F. Supp. 3d 87, 101 (D.D.C. 2024); *see also Parashkooh v. Platek*, 2025 WL 1732518, at *5 (E.D. Va. June 18, 2025) (holding same with respect to F and/or J category nonimmigrant visas). Other courts in this Circuit have also specifically reached this same conclusion with respect to K-1 visas. *See Turner v. Blinken*, 2024 WL 4957178, at *6 (D. Md. Dec. 3, 2024) ("Absent further authority, Plaintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal of Quentin's visa pursuant to § 221(g).") Thus, this Court lacks jurisdiction here.

Seeking to avoid this conclusion and the clear weight of authority in this regard, Plaintiffs argue that a Section 221(g) refusal does not satisfy the State Department's duty because the Section 221(g) refusal is not necessarily "final." *See generally* Dkt. 17. This Court defers the question of whether a refusal under Section 221(g) is a "final adjudication," because this Court concludes that there is no *clear* mandatory duty under the INA or its implementing regulations requiring consular officers to

---

[1] Many courts, both within the Fourth Circuit, and in other circuits, have come to the same conclusion. *See Sarshartehran v. Rubio*, 2025 WL 1261787, at *6 (W.D. Va. May 1, 2025) (holding that after a Section 221(g) refusal, "there is no further discrete action consular officers must take to satisfy their obligations"); *Aslam v. Heller*, 2024 WL 3535389, at *6-7 (M.D.N.C. July 23, 2024) (holding that visa refusals under INA Section 221(g) are a "discrete action" thereby "discharge[ing the defendants'] nondiscretionary duty"); *Farahani v. Laitinen*, 2025 WL 360833, at *4 (M.D.N.C. Jan. 31, 2025) ("The consular officer in this case . . . discharged the discrete, non-discretionary duty to adjudicate the visa applications of Dr. Farahani's family by informing them that the applications had been refused and were being placed in administrative processing."); *Turner v. Blinken*, 2024 WL 4957178, at *5 (D. Md. Dec. 3, 2024) (collecting cases in this circuit and deciding "[p]laintiffs cannot meet their burden to prove subject matter jurisdiction because they cannot show that Defendants have failed to fulfill a discrete, non-discretionary duty to act after their refusal . . . pursuant to [Section] 221(g)"); *Berenjian v. Blinken*, 2024 WL 3732451, *3 (E.D. Va. Aug. 8, 2024) (holding that "[t]his [§ 221(g)] refusal at the time of the applicant's interview discharges the government's obligations with respect to the application," thus depriving the district court of subject-matter jurisdiction); *accord Denisova v. Mayorkas*, 2024 WL 2043664, at *3-4 (W.D. Pa. May 8, 2024) (holding the same); *Conley v. United States Dep't of State*, 2024 WL 1640074, at *4-5 (D. Mass. Apr. 16, 2024) ("Because [the] defendants have acted on the visa application, they have not failed to take any legally required action. . . .").

reach a more definitive decision on a visa application that has already been refused. Nothing in the regulations provide a "'specific, unequivocal command' for [the] State [Department] to issue a final, unreviewable decision." *Yaghoubnezhad*, 734 F. Supp. 3d at 102 (quoting *Norton*, 542 U.S. at 63); *see also Ramizi v. Blinken*, 745 F. Supp. 3d 244, 261 (E.D.N.C. 2024) ("[T]he possibility of reconsideration of a refusal does not mean that the refusal was not a refusal."); *Farahani*, 2025 WL 360833, at *4 (holding the same). Further, the absence of any finality requirement in 22 C.F.R. § 41.121(a) or § 42.81 is telling because while the INA contains the general directive that visa applications "shall be reviewed and adjudicated," 8 U.S.C. § 1202(d), it is 22 C.F.R. § 41.121(a) that contains the discrete requirement that visa applications "must" be issued or refused, 22 C.F.R. § 41.121(a). By refusing the visa applications, Defendants here have already taken this discrete, required agency action, and Plaintiffs have not pointed to any alternative statute or regulation that might provide a "clear indication of binding commitment" to take additional action resulting in a conclusive, unreviewable determination. *Norton*, 542 U.S. at 69.

In sum, the Court lacks jurisdiction over Plaintiffs' claims because Defendants have already satisfied their mandatory duties under the INA and implementing regulations refusing the application under Section 221(g), and there is no further discrete, required agency action that the Court could compel Defendants to take. Accordingly, Defendants' Motion will be granted.

### III. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendants' Motion to Dismiss for lack of subject-matter jurisdiction (Dkt. 11) is GRANTED.

The Clerk is directed to forward copies of this Order to all parties and counsel of record and to close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 4, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge